**INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS and Local No. 23, International Union of Elevator Constructors, Plaintiffs,**

v.

**TOTAL ACCESS ELEVATOR COMPANY, INC. and its alter ego Total Access, Inc. and Total Access, Inc., Defendants.**

**Civ. No. 90–99–FR.**

United States District Court,
D. Oregon.

Jan. 11, 1991.

Paul Hays, Carney, Buckley, Kasameyer & Hays, Portland, Or., Francis J. Martorana, O'Donoghue & O'Donoghue, Washington, D.C., for plaintiffs.

William F. Hoelscher, Hoelscher & Associates, Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is plaintiffs' motion for summary judgment (# 22).

## UNDISPUTED FACTS

Plaintiffs are the International Union of Elevator Constructors (IUEC) and Local No. 23, International Union of Elevator Constructors (Local 23). The IUEC represents persons employed in the business of installing, modernizing and servicing elevators and escalators throughout the United States and Canada. Local 23 covers most of the State of Oregon and the western part of the State of Idaho.

The IUEC is party to a nationwide collective bargaining agreement known as the "Standard Agreement" which provides the terms and conditions of employment for those individuals who are employed by employers who are parties to the Standard Agreement. An employer may become a party to the Standard Agreement by signing the "short form" agreement which incorporates by reference the terms of the Standard Agreement. Among other things, the Standard Agreement provides for a union hiring hall, wages, contributions for fringe benefits, travel expenses, leave time, and grievance procedures.

On May 13, 1988, Chris Casady, on behalf of Total Access Elevator Company, Inc. (Total Elevator) signed a short form agreement with Local 23 thereby becoming a party to the Standard Agreement. Prior to signing the short form agreement with Local 23, Casady stated to the business representative of Local 23, John Heaton, that he was divesting Total Elevator of elevator work pertaining to residential access for handicapped persons contemporaneously with the signing of the short form agreement, but that he would sign the short form agreement for future commercial elevator work.

A few days after May 13, 1988, Casady requested Local 23 to refer two members of Local 23 to Total Elevator for work at the Myrtle Point School District # 41 in Myrtle Point, Oregon. Those two members

of Local 23 worked for approximately three weeks and were compensated in accordance with the terms and conditions of the Standard Agreement.

On May 24, 1988, Casady sold a portion of Total Elevator to his mother, Evelyn Casady. The sales agreement between Chris Casady and Evelyn Casady provides that Total Elevator is selling "its assets of used inventory and rights of installation of handicap accessibility equipment" to Evelyn Casady for a sales price of $65,000 to be paid in a lump sum at the time the sales agreement is signed. Evelyn Casady thereafter formed Total Access, Inc. (Total Access) and hired Chris Casady as a consultant. More than $53,000 was paid directly from the joint checking account of Evelyn Casady and her husband to Chris Casady or invested in Total Access. Total Access filed articles of incorporation with the State of Oregon on February 16, 1989.

Chris Casady interviewed and hired Phil Waste on behalf of Total Access as an elevator mechanic. Waste worked from June, 1988 to June, 1989 installing lifts and elevators in residential and commercial structures. Waste, who was not hired through Local 23, was not accorded the terms and conditions of employment specified by the Standard Agreement.

In the spring of 1989, Local 23 investigated the operations of Total Access and of Total Elevator and learned that Waste had been hired by Chris Casady on behalf of Total Access and that Waste had installed lifts and elevators. On June 8, 1989, Local 23 filed a grievance pursuant to Article XV of the Standard Agreement alleging that Total Elevator was performing work under an alter ego or sham entity called Total Access without complying with the terms and conditions of the Standard Agreement.

The grievance was processed and presented to a Regional Director for the IUEC and an Area Labor Chair for the National Elevator Industry, Inc., an association of employers which represents employers who are parties to the Standard Agreement. The Standard Agreement provides that the meeting to be held and the decision to be reached will be final and binding. A grievance meeting was held, and Local 23 and Chris Casady attended.

Local 23 presented evidence as to the timing of the sale; that while it was the mother of Chris Casady who owned Total Access, Chris Casady managed Total Access; that Total Access and Total Elevator used the same office; that Total Access used the vendor and supplier accounts of Total Elevator; that Waste worked for Total Elevator and was covered under the health insurance policy of Total Elevator; and that Waste recorded his time on the time sheets of Total Elevator and answered to Chris Casady.

Chris Casady argued that the two companies were separate companies and produced evidence that he had informed the business manager of Local 23, Heaton, in advance of signing the collective bargaining agreement that he intended to comply with the contract only as it related to his new venture of expansion into commercial elevator competition and not to his existing business of residential, disabled access lifts, which he intended to divest, because the contractual per diem and mileage rates did not "pencil out" so that the business of residential, disabled access lifts could make a profit operating under a union collective bargaining agreement. Chris Casady asserted that Local 23 was required to produce Heaton to testify; that Evelyn Casady had in fact purchased the residential portion of the business; and that the connections between Total Elevator and Total Access were explained by the fact that a reasonable transition period was necessary to separate the two companies.

A decision was issued finding that the grievance was meritorious and ordering that all mechanics and helpers performing installation work be compensated in accordance with the Standard Agreement. Chris Casady attempted to appeal the decision, but the appeal was rejected by the National Arbitration Committee.

Thereafter, Total Elevator failed to comply with the grievance decision of the National Arbitration Committee and refused to compensate its employees under the Standard Agreement.

The IUEC and Local 23 bring this action to enforce the Standard Agreement and the grievance decision of the National Arbitration Committee and to require Total Elevator to comply with the Standard Agreement which expires on July 8, 1992. In Count 1 of the complaint, the IUEC and Local 23 ask the court to confirm and enforce the final and binding joint labor/management panel grievance decision and find that Total Elevator is in violation of the collective bargaining agreement. In Count 2 of the complaint, the IUEC and Local 23 seek an independent court determination that Total Access is an alter ego or sham company and order the enforcement of the collective bargaining agreement against Total Access based on that independent determination.

## CONTENTIONS OF THE PARTIES

The IUEC and Local 23 contend that the grievance was arbitrable and that the grievance decision draws its essence from the collective bargaining agreement; that any defenses raised by Total Elevator and Total Access are barred by the statute of limitations applicable to suits to vacate an award; and that Total Access is the alter ego of Total Elevator and bound to the Standard Agreement.

Total Elevator and Total Access contend that this action is barred by the six-month statute of limitations in section 10(b) of the National Labor Relations Act; that Total Access is not within the jurisdiction of this court because it is not signatory to the collective bargaining agreement; that the joint grievance decision is not binding because of the hostility of the tribunal; and that Total Access is not the alter ego of Total Elevator.

## APPLICABLE LAW

The scope of review of an arbitration award is extremely narrow. Courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of act or on misinterpretation of the contract. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987). The court

"must defer to the arbitrator's award if on its face the award 'represents a plausible interpretation of the contract in the context of the parties' conduct.' " *Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275, 1278–79 (9th Cir.1982), citing *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union, Local 28*, 412 F.2d 899, 903 (9th Cir.1969). The decision of the arbitrator will be upheld "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). A joint decision by the representatives of the parties as a step in the grievance procedure is entitled to the same weight and reviewed under the same standards as a neutral arbitrator's award. *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss and Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963).

## ANALYSIS AND RULING

Total Elevator and Total Access do not dispute the contention of the IUEC and Local 23 that their defenses attacking the award are barred by their failure to move to vacate the grievance award within the twenty-day statute of limitations borrowed from O.R.S. 36.350. Therefore, the only claim that can be appropriately raised by Total Elevator and Total Access is a challenge to the arbitrability of the grievance.

■ Total Elevator and Total Access argue that the IUEC and Local 23 cannot bring this action because it is barred by the six-month statute of limitations in section 10(b) of the National Labor Relations Act. However, the grievance decision and the award based thereon were issued on September 6, 1989. This action to enforce the award was filed less than six months later on February 7, 1990. Both Counts 1 and 2 were timely filed.

■ Total Elevator and Total Access next assert that this court lacks subject matter jurisdiction over Total Access because Total Access is not a signatory to the

collective bargaining agreement. Total Access argues that since it is not a signatory to the collective bargaining agreement, it cannot be required to submit to arbitration any dispute which it has not agreed to arbitrate.

An issue is arbitrable only if the parties have agreed to arbitration. Article XV of the Standard Agreement to which Total Elevator is bound provides that "[a]ny difference or dispute regarding the application and construction of this Agreement, shall be referred to as a 'grievance' and shall be resolved under the following procedure." Exhibit 1 to Affidavit of Robert Williams, p. 18. Thereafter, a multi-step procedure through which a grievance is processed is set forth culminating in arbitration. The issue of whether Total Elevator was performing work covered under the collective bargaining agreement under an alter ego or as a sham entity constitutes a difference or a dispute within the meaning of Section XV of the Standard Agreement, and Total Elevator was obligated to arbitrate the dispute.

In *Gateway Structures, Inc. v. Carpenters 46 N. Cal. Ctys. Conf. Bd.*, 779 F.2d 485 (9th Cir.1985), the signatory employer appealed an arbitration award in favor of a union which held that a nonsignatory employer was bound by the terms of a collective bargaining agreement, and the union counterclaimed for enforcement of the arbitration award. The court explained:

> The Union's effort to apply the agreement with Gateway to NAI, a nonsignatory employer, can prevail under either of two doctrines—the "alter ego" doctrine or the "single employer" doctrine. Under the alter ego doctrine, the court considers the interrelation of operations, common management, centralized control of labor relations, and common ownership. If these factors show that the transaction is a sham designed to avoid the obligations of a collective bargaining agreement, the nonsignatory employer will be bound. *See Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1276–77 (9th Cir.1984).

779 F.2d at 488. This case is contrary to the position of Total Access that this court has no jurisdiction over it because it is not a signatory to the collective bargaining agreement.

Total Access points the court to *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647 (9th Cir.1988), in which the union brought an action to enforce an arbitration award alleging that a successor employer was bound by a collective bargaining agreement between a union and a predecessor employer. In footnote 6, the court noted:

> In *Gateway Structures*, 779 F.2d at 488–89, and *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742 (9th Cir.1985), we held that the alter ego issue was arbitrable. In both cases, however, only the signatory party was before us on appeal; the nonsignatory party did not challenge the arbitrator's finding.

863 F.2d at 653, n. 6. The court went on to conclude that while the factual decision of the arbitrator was entitled to deference, the issue of arbitrability was for the court and not the arbitrator. In reversing the order granting summary judgment in favor of the union, the court concluded:

> [T]he question whether Richwood [the successor employer] adopted the [collective bargaining agreement]'s arbitration provision, or was bound by it as an alter ego or single employer, was for the district court in the present case. We remand to the district court for a de novo determination whether Richwood was in fact the alter ego of AMS [the predecessor employer] or otherwise bound by the terms of AMS' [collective bargaining agreement].

863 F.2d at 653–54.

■ In the first claim for relief, the union asks that the court confirm and enforce the final decision and award issued on September 6, 1989. The grievance was filed against Total Access Elevator, Inc. The decision states that "[t]he company [Total Access Elevator] violated the agreement by performing work covered under the agree-

ment under both its name and alter ego or sham entity called 'Total Access, Inc.' and failing to comply with the terms and conditions of the agreement including wages and fringe benefits contributions." Exhibit 3 to Affidavit of Robert Williams. The decision concludes that "Total Access Elevator, Total Access, Inc. is to pay wages, fringes and expenses if necessary for mechanics and helpers while installing equipment in accordance with the Collective Bargaining Agreement or Standard Agreement." *Id.*

Total Elevator was bound by the collective bargaining agreement to arbitrate. The decision draws its essence from the collective bargaining agreement and is entitled to deference and enforcement by this court.

The motion for summary judgment of the IUEC and Local 23 is granted as to claim 1 as to Total Elevator.

■ Enforcing the decision against Total Access presents a more difficult issue. Total Access is not a signatory party to the arbitration clause of the collective bargaining agreement. However, the court in *Gateway* stated that "[i]f these factors show that the transaction is a sham designed to avoid the obligations of a collective bargaining agreement, the nonsignatory employer will be bound." 779 F.2d at 488. The court went on to conclude in *Arizona Mechanical* that "[t]he question whether [the successor employer] was bound by [the collective bargaining agreement] as an alter ego ... was for the district court ... for a de novo determination." 863 F.2d at 653.

This court reviews the record *de novo* to determine whether Total Access is bound by the arbitration clause of the collective bargaining agreement and the arbitration decision.

As a general rule, a corporation purchasing all or most of the assets of another corporation does not assume the debts and liabilities of the corporation that it purchases. However, there are exceptions to this general rule. In *Schmoll v. ACandS, Inc.,* 703 F.Supp. 868 (D.Or.1988), Judge Panner noted the exceptions as follows:

[T]he purchasing corporation may be responsible for the selling corporation's obligations if (1) the purchasing corporation expressly or impliedly agrees to assume those liabilities; (2) the transaction amounts to a consolidation or merger of the corporations; (3) the purchasing corporation is a continuation of the selling corporation; or (4) the corporations enter the transaction to escape liability.

703 F.Supp. at 872.

The evidence in this case is undisputed that Chris Casady and Total Elevator entered into an agreement to sell the rights to install handicap lifts to his mother, Evelyn Casady, for the sum of $65,000. Chris Casady wanted to divest Total Elevator of this portion of the business because he believed that he could not economically employ individuals in that portion of the business under the terms of the collective bargaining agreement. Evelyn Casady formed Total Access in June, 1988, but did not file articles of incorporation with the State of Oregon until February 16, 1989.

There is evidence that Total Elevator and Total Access continued to be managed by Chris Casady; that they had common offices, equipment, insurance policies, employees, clerical and bookkeeping operations, accounts with suppliers and manufacturers; and that they have at times held themselves out as one and the same company.

Total Access hired Phil Waste to perform elevator work upon terms less favorable than the terms required by the Standard Agreement. Chris Casady interviewed and hired Waste. Chris Casady supervised Waste's work on a day-to-day basis. Waste worked on jobs which were claimed to be the jobs of Total Elevator. Waste was held out to be an employee of Total Elevator by Chris Casady on one occasion. The time sheets for Waste were often on the forms of Total Elevator although Total Access was identified as his employer.

This court finds after *de novo* review of the evidence in the record that the decision of the arbitrator that work performed by Waste and claimed to be performed for

Total Access was a sham to avoid the collective bargaining agreement that was binding upon Total Elevator is supported by the evidence. The assertion of Total Access that the connection between Total Access and Total Elevator was a simple transition period does not change the fact that Total Access operated as a part of Total Elevator and not a separate company.

The motion for summary judgment of the IUEC and Local 23 is granted as to claim 1 as to Total Access.

## CONCLUSION

The motion for summary judgment (# 22) of the IUEC and Local 23 as to the first claim for relief is granted. The alternative motion as to the second claim for relief is deemed moot.